UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROSCHEEM GRAY,

       Plaintiff,

v.                       1:16-CV-1239
                       (GTS/DJS)
COEYMANS POLICE DEPARTMENT;
GREGORY DARLINGTON, Chief of Police;
RYAN JOHNSON, Senior Investigator; RYAN
CROSS, Police Officer; and JOHN AND JANE
DOES, Police Officers,

       Defendants.
_____

APPEARANCES:               OF COUNSEL:

ROSCHEEM GRAY
 Plaintiff, *Pro Se*
78 Hop-O-Nose
Catskill, NY 12414

MURPHY BURNS LLP            THOMAS K. MURPHY, ESQ.
 Counsel for Defendants
407 Albany Shaker Road
Loudonville, NY 12211

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

Currently before the Court, in this *pro se* civil rights action filed by Roscheem Gray ("Plaintiff") against the Town of Coeymans Police Department, former Chief of Police Gregory Darlington, former Senior Investigator Ryan Johnson, former Police Officer Ryan Cross, and John and Jane Doe police officers, is Defendants' motion for summary judgment. (Dkt. No. 53.) For the reasons set forth below, Defendants' motion is granted.

I.   **RELEVANT BACKGROUND**

   A.   **Plaintiff's Complaint**

Generally, in his Complaint, Plaintiff asserted multiple claims, including claims of unreasonable and unlawful search and seizure in violation of the Fourth Amendment, denial of due process in violation of the Fourth, Fifth, and Fourteenth Amendments, conspiracy to violate his civil rights, and municipal liability. (Dkt. No. 1 [Pl.'s Compl.].) On January 27, 2017, the Court adopted the report-recommendation of U.S. Magistrate Judge Daniel J. Stewart, in which the Court (on *sua sponte* review) dismissed Plaintiff's claims related to search and seizure and conspiracy. (Dkt. No. 8 [Decision and Order filed Jan. 27, 2017]; Dkt. No. 6 [Decision and Order filed Dec. 16, 2016].) Additionally, on August 14, 2018, the Court further dismissed Plaintiff's claims against the Village of Ravena in response to that defendant's motion to dismiss. (Dkt. No. 38 [Decision and Order filed Aug. 14, 2018].) As a result, the only remaining claims are (1) Plaintiff's claim that Defendants violated his procedural due process rights by retaining personal property taken incident to his arrest, including a 2006 Honda Accord, a 2007 Acura TL, his cellphone, and his wallet (which contained identification, credit cards, personal family photographs, and an uncashed paycheck), without providing him notice of the location of those items or a process through which to recover them, and (2) Plaintiff's claim for municipal liability against the Town of Coeymans Police Department for the underlying due process violation. (Dkt. No. 1.)

   B.   **Undisputed Material Facts on Defendants' Motion for Summary Judgment**

Plaintiff did not provide a response to Defendants' Statement of Material Facts as required by the Local Rules of this Court. N.D.N.Y. L.R. 7.1(a)(3) ("The opposing party shall

file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises."). Even considering Plaintiff's *pro se* status, his failure to respond according to the Local Rules entitles the Court to deem the factually supported assertions in Defendants' Statement of Material Facts to be admitted, where, as here, Defendants have ensured that Plaintiff was informed of the consequences of such a failure to respond. (Dkt. No. 53, at 3 [attaching Notification of the Consequences of Failing to Respond to a Summary Judgment Motion to Defendants' motion]); *see* N.D.N.Y. L.R. 7.1(a)(3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."); *Sankara v. Montgomery*, 16-CV-0885, 2018 WL 4610686, at *4 (N.D.N.Y. June 25, 2018) (Dancks, M.J.) (noting that the Court will accept a movant's statement of facts as true if a *pro se* plaintiff has not properly responded despite being specifically advised of the possible consequences of failing to respond to the motion) adopted by 2018 WL 3408135 (N.D.N.Y. July 13, 2018) (Scullin, J.). The Court notes that Defendants used the District's form Notification of the Consequences of Failing to Respond to a Summary Judgment Motion, which specifically states that Plaintiff was required to provide a response to Defendants' Statement of Material Facts and warns of the consequences of failing to do so. (Dkt. No. 53, at 3.) Despite receiving a reminder that his response was due (TEXT NOTICE filed Aug. 5, 2019), Plaintiff did not provide any response to Defendants' motion or evidence to dispute Defendants' Statement of Material Facts. (*See generally* Docket Sheet.) As a result, the Court has deemed as admitted the

following asserted facts, which are each supported by the admissible evidence. (Dkt. No. 53, Attach. 6 [Defs.' Rule 7.1 Statement].)

1. On October 11, 2013, Defendant Cross (who was, at that time, a Town of Coeymans Police Officer) stopped a 2006 Honda Accord on Route 9W in the Village of Ravena that was being operated by an individual named Desember Busch.

2. After the arrest of Ms. Busch, the 2006 Honda Accord was towed by Burns Towing to its premises located just outside of the Village of Ravena.

3. Defendant Cross provided Ms. Busch with a "Tow Sheet" noting the location to which the vehicle was being towed.

4. The 2006 Honda Accord was not seized as evidence by Defendant Town of Coeymans Police Department and was not subjected to a forfeiture proceeding.

5. Later that same day, Plaintiff was arrested after an appointment with Federal Probation in Albany, New York.

6. The vehicle Plaintiff had driven to his appointment was a 2007 Acura, which was seized incident to his arrest and transported to the Town of Coeymans Police Department as possible evidence.

7. The incident and arrest report that is related to the arrests of Plaintiff and Ms. Busch contains an entry under the "Vehicle" header in which it is noted that the 2006 Honda Accord was towed by "Burns Auto" to its lot.

8. After Plaintiff's arrest, his personal property (i.e., his wallet, its contents, and his cellphone) was seized and logged into evidence at the Town of Coeymans Police Department.

9. The 2007 Acura was not subjected to any civil forfeiture proceedings by the Town

of Coeymans Police Department.

10.     The 2006 Honda Accord was stored at Burns Towing and was available for pick-up by Plaintiff or his agent pursuant to the requirements of Burns Towing.

11.     In his sworn deposition on February 12, 2019, Plaintiff testified that he "was never notified where my car was, who towed my car."

12.     However, in response to follow-up questions, Plaintiff admitted that, when he drafted his Complaint, he was aware that the 2006 Honda Accord had been towed, and that he believed he "probably" read this information in the police report related to Ms. Busch's arrest.

13.     Despite the fact that the identity of the tow service was in the police report of his own arrest, Plaintiff denied knowing at the time of his arrest who had towed his vehicle.

14.     Plaintiff also admitted in response to follow-up questions in his deposition that, within "months" of his arrest and while he was being held in jail, he was notified that he had received a certified letter at the address where he received mail (78 Hop-O-Nose, Catskill, New York) from Burns Towing.

15.     Plaintiff testified that the certified letter indicated that he owed Burns Towing $2,500 in daily storage fees associated with the 2006 Honda Accord.

16.     Plaintiff testified that he made a deal with a friend that he would give the 2006 Honda Accord to that friend if that friend paid the amount demanded by Burns Towing; however, Plaintiff testified that, when that friend was not interested in doing so, Plaintiff did nothing further with regard to the 2006 Honda Accord.

17.     Plaintiff testified that he had purchased the 2007 Acura in 2013.

18.     Plaintiff financed the purchase of the 2007 Acura through Ally Financial ("Ally").

19. Plaintiff testified that he had made the monthly payments on the loan for the 2007 Acura through October 2013 (when he was arrested); he did not make the November 2013 payment or any subsequent payments.

20. Plaintiff testified that he received letters and bills regarding the 2007 Acura loan payments at his mailing address while he was in jail, but that he "decided not to make payments because the police illegally took my car, stole my car, basically."

21. The 2007 Acura that was seized incident to Plaintiff's arrest was repossessed by Ally, as the lienholder, in 2014.

22. Plaintiff testified that the Town of Coeymans Police Department did not attempt to go through the civil forfeiture process related to the 2007 Acura.

23. In his verified Complaint, Plaintiff swears that, in addition to the two vehicles, Defendants seized his personal property consisting of a wallet (containing identification, credit cards, photographs, and a paycheck) and his cellphone.

24. Plaintiff testified that the identification in his wallet consisted of a conditional driver's license, his birth certificate, and his Social Security card.

25. Plaintiff testified that, by the time of his deposition, he had replaced his birth certificate and Social Security card, and he was in the process of replacing his conditional driver's license.

26. Plaintiff testified that at least one of the multiple credit cards in his wallet had balances that he had not paid, resulting in a civil judgment against him in the amount of $22,000.

27. Plaintiff testified that the photographs were of his family members.

28. Plaintiff testified that the paycheck contained in his wallet at the time of his arrest

was for work performed for a local contractor; he further testified that he had made no attempt to have that check voided or replaced by his employer.

29. Plaintiff testified that the cellphone had been provided without charge by his cell service carrier when he had signed a new two-year contract.

30. Plaintiff was arrested on October 11, 2013, and was not released from prison until March 16, 2017.

31. In his verified Complaint, Plaintiff swears that he sent a letter dated January 30, 2015, to the Town of Coeymans Police Department regarding his property.

32. Defendant Darlington, former Chief of Police for the Town Of Coeymans Police Department, retired from the Police Department in October 2014.

33. Before his retirement in October 2014, Defendant Darlington did not receive any request for the return of Plaintiff's property or information regarding its location from Plaintiff or any individual on Plaintiff's behalf.

34. Prior to leaving his employment with the Town of Coeymans Police Department in 2015, Defendant Cross was not contacted regarding the return of Plaintiff's property and was not responsible for storing and returning evidence.

35. Prior to leaving his employment with the Town of Coeymans Police Department, Defendant Johnson was not contacted regarding the return of Plaintiff's property and was not responsible for storing and returning evidence.

36. Defendants Darlington, Johnson, and Cross have no knowledge of what happened

to Plaintiff's personal property.[1]

### C. Parties' Briefing on Defendants' Motion for Summary Judgment

#### 1. Defendants' Memorandum of Law

Generally, in their motion for summary judgment, Defendants assert three arguments. (Dkt. No. 53, Attach. 7 [Defs.' Mem. of Law].) First, Defendants argue that Plaintiff cannot establish facts sufficient to show a violation of his due process rights. (*Id.* at 5-12.) More specifically, Defendants argue as follows: (a) as to the 2006 Honda, it is undisputed that (i) this vehicle was taken by a towing company rather than held by Defendants, (ii) Plaintiff's girlfriend was given the tow slip, (iii) the name of the tow company and the fact that the vehicle was at that company's lot was noted on the report related to the arrest of both Plaintiff and Ms. Busch, (iv) Plaintiff received a letter from the tow company after an unspecified number of months that informed him of the location of this vehicle, and (v) Plaintiff did not make any subsequent effort to recover this vehicle beyond offering to sell it to a friend if that friend paid the towing fees due on the vehicle; (b) as to the 2007 Acura, Defendants held this vehicle while his criminal charges

---

[1] Defendants assert that, after the filing of Plaintiff's Complaint, the current staff of the Town of Coeymans Police Department undertook an effort to locate Plaintiff's personal property that had been logged into evidence, but that the property could not be located. (Dkt. No. 53, Attach. 6, at ¶ 35 [Defs.' Rule 7.1 Statement].) However, Defendants cite only their attorney's affidavit in support of this asserted fact. (*Id.*) Under the Local Rules of Practice of this Court, attorney affidavits do not qualify as evidence to support a Statement of Material Facts for the purposes of a motion for summary judgement. *See* N.D.N.Y. L.R. 7.1(a)(3) ("The record for the purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits."). As a result, Defendants' asserted fact on that matter cannot be deemed to be undisputed. However, because the affidavits of Defendants Darlington, Johnson, and Cross establish that these Defendants do not have personal knowledge of where Plaintiff's property is located, such fact is undisputed and thus has been included in the Court's Statement of Undisputed Material Facts.

were pending (due to its potential value as evidence), but it was repossessed by the lienholder in 2014 due to Plaintiff's admitted failure to make payments on the loan after October 2013; (c) as to his personal property, Plaintiff has admitted that he has since replaced his identification, that the cellphone was given to him free of charge, and that he never sought to have the paycheck voided or reissued to him, and the relevant individual officers never received any request related to the return of these items during their tenure with the Town of Coeymans Police Department; (d) there is no evidence of any intent to deprive Plaintiff of his property, and any failure to return it to him was at most negligence; (e) Plaintiff is not legally able to pursue a claim under the Due Process Clause because there were state remedies available to him to seek the return of that property (i.e., an Article 78 proceeding) of which he did not take advantage; and (f) Plaintiff cannot establish personal involvement by Defendants because none of them received any notice or request for return of the relevant property. (*Id.*)

Second, Defendants argue that Plaintiff has failed to state a cognizable claim for municipal liability because (a) as an initial matter, a municipal police department cannot be sued separately from the municipality itself and Plaintiff has not sued the Town of Coeymans, and (b) in any event, Defendant Darlington (as a policymaker for the police department) could not have received (much less ignored) Plaintiff's alleged requests for his property because Defendant Darlington retired from his role as Chief of Police before those alleged requests (particularly the 2015 letter) were made. (*Id.* at 12-13.)

Third, Defendants argue that they are protected from liability as a matter of law by the doctrine of qualified immunity because, based on the current record, it cannot be genuinely disputed that they acted in an objectively reasonable manner and did not knowingly violate

9

Plaintiff's rights. (*Id.* 13-14.)

### 2. Plaintiff's Failure to Respond

Plaintiff failed to file a response to Defendants' motion by the deadline of August 19, 2019, and has not filed any response as of the date of this Decision and Order.

## II. LEGAL STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[2] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ.

---

[2] As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

P. 56(a), (c), (e).³

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*.⁴ (This is because the Court extends special solicitude to the *pro se* litigant by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)⁵ As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigant must obey a district court's procedural rules.⁶

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten

---

³ Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

⁴ *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

⁵ *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

⁶ *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[7]–even where the non-movant was proceeding *pro se*.[8]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[9] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30,

---

[7] Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[8] *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases).

[9] *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

III. ANALYSIS

  A. Whether Plaintiff's Procedural Due Process Claim Against Defendants Darlington, Johnson, Cross, and Does Should Be Dismissed

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendants' memorandum of law. (Dkt. No. 53, Attach. 7, at 5-12 [Defs.' Mem. of Law].) To those reasons, the Court adds the following four points.

First, Defendants are correct that the existence of an adequate state post-deprivation remedy prevents the bringing of a procedural due process claim pursuant to 42 U.S.C. § 1983. *See Zinermon v. Burch*, 494 U.S. 113, 129-30 (1990) (discussing favorably precedent indicating that post-deprivation process is sufficient for random and unauthorized acts by state employees); *New York State NOW v. Pataki*, 261 F.3d 156, 169 (2d Cir. 2001) ("[A] procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies."). This Court has previously determined that New York's Article 78 (which provides a remedy for those who seek to challenge any action or inaction by an administrative agency or officers of state or local government) provides an adequate remedy for a claim that police officers have failed to return property that was seized incident to arrest. *Murphy v. Gibbons*, 13-CV-1433, 2014 WL 4828126, at *5 (N.D.N.Y. Sept. 29, 2014) (Sharpe, J.); *Hourihan v. Lafferty*, 58 F. Supp. 2d 10, 14-15 (N.D.N.Y. 1999) (Hurd, M.J.); *see also Kraebel v. New York City Dept. of Hous. Pres. and Dev.*, 959 F.2d 395, 404 (2d Cir. 1992) (noting that due process would be satisfied by the availability

of Article 78 proceedings as long as the deprivation was caused by random and unauthorized state conduct as opposed to being caused by an established state procedure that fails to provide proper safeguards). Because the Court sees no reason that Plaintiff could not have pursued an action pursuant to Article 78 seeking return of his property, Plaintiff's procedural due process claim must fail.

Second, to the extent that Plaintiff alleged that he was denied due process as a result of Defendants' failure to issue him a receipt or voucher for his property, the record does not contain any evidence to establish that such failure was the result of anything other than negligence, and negligence is insufficient to establish a violation of due process under 42 U.S.C. § 1983. *Hourihan*, 58 F. Supp. 2d at 15 (citing *Grune v. Rodriguez*, 176 F.3d 27, 32 [2d Cir. 1999]). This is especially so where, as here, Plaintiff's own arrest report noted the identity of the tow contractor related to the 2006 Honda, and Plaintiff had counsel during the time in question.

Third, even if Plaintiff's claim was cognizable under 42 U.S.C. § 1983, the Court agrees with Defendants that the admissible evidence does not sufficiently establish personal involvement by the individual Defendants. "Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on a claim of damages under [42 U.S.C.] § 1983." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001). To establish personal involvement, the plaintiff must establish one of the following: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant failed to remedy the wrong after being informed of the violation through a report or appeal; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in

supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the plaintiff's rights by failing to act on information indicating that unconstitutional acts were occurring. *Brandon v. Kinter*, 938 F.3d 21, 36-37 (2d Cir. 2019).

In his verified Complaint, Plaintiff asserts the following facts related to the individual Defendants' personal involvement in the underlying actions: (1) Defendant Cross initiated the traffic stop of Ms. Busch and participated in the questioning and arrest of Ms. Busch and the search of Ms. Busch's (and Plaintiff's) residence; (2) Defendant Johnson arrived on the scene during that traffic stop and participated in the questioning and arrest of Ms. Busch and the search of Ms. Busch's (and Plaintiff's) residence; (3) Defendant Cross arrested Plaintiff and Defendant Johnson questioned him at the police station; (4) Defendant Darlington seized Plaintiff's Acura and his wallet and other relevant personal property incident to his arrest; (5) Defendants Darlington, Johnson, and Cross failed to inform Plaintiff of the location of his two vehicles, refused to return his other personal property upon his and his attorney's requests, or provide him with a voucher for his property; and (6) "to date, the Coeyman's [sic] Police Department have never returned plaintiff's 2007 Acura, 2006 Honda Accord, wallet, identification, personal photos, credit cards, paycheck, or cellphone." (Dkt. No. 1, at ¶¶ 9-41, 90 [Pl.'s Compl.].)

Although many of these factual assertions are generally consistent with the admissible evidence, there is no admissible evidence showing that the individual Defendants had any involvement in the failure to return Plaintiff's property to him. Defendant Darlington stated in his affidavit that he had retired from the Town of Coeymans Police Department before Plaintiff allegedly sent a letter requesting the return of his property, and thus could not have ignored his request; he also states that he has no knowledge about what happened to Plaintiff's personal

15

property. (Dkt. No. 53, Attach. 3, at ¶¶ 7, 9 [Darlington Aff.].) Defendant Cross stated in his affidavit that he had no further involvement with the handling of Plaintiff's property after Plaintiff and Ms. Busch were processed, that he was never contacted about or asked to return Plaintiff's property prior to his departure from the Town of Coeymans Police Department in 2015, and that he had not been responsible for the storage or safekeeping of any property held as evidence in his capacity as a police officer. (Dkt. No. 53, Attach. 4, at ¶¶ 9-11 [Cross Aff.].) Defendant Johnson stated in his affidavit that he was aware that Plaintiff's 2007 Acura had been repossessed as a result of Plaintiff's non-payment of the lease, but he otherwise had no knowledge of the disposition of any of Plaintiff's property, that he was never contacted about Plaintiff's property prior to his departure from the Town of Coeymans Police Department, and that it was not within his duties and responsibilities to arrange for the return of such property or to notify Plaintiff about the disposition of his property. (Dkt. No. 53, Attach. 5, at ¶¶ 5-8 [Johnson Aff.].) Additionally, although Plaintiff testified at his deposition that he and his friends or family made inquiries about his property (in particular his vehicles) and requested its return almost from the time it was seized, the record shows that (a) the individual Defendants were not in possession of the 2006 Honda, which had been towed by Burns Towing immediately after Ms. Busch's arrest, and (b) the 2007 Acura was being held as possible evidence and Plaintiff's related criminal matter was pending for the entire period until that vehicle was repossessed by Ally in 2014. (Dkt. No. 53, Attach. 2, at 42-46, 51, 55-56 [Pl.'s Dep.].) As a result, the individual Defendants would not have been able to return the vehicles in particular at the time of any of those alleged informal requests.

The admissible evidence therefore does not establish that any of the individual

16

Defendants were directly involved in the alleged unlawful withholding of Plaintiff's property, that they failed to remedy a wrong after being informed of it, or that they failed to act on information that an unconstitutional act has occurred. In particular, even if Plaintiff and his friends and family made informal inquiries and requests before the 2015 letter, there is no admissible evidence establishing that these requests were made to any of the Defendants specifically, or that Defendants were made aware of them. Additionally, although Plaintiff asserted that he requested return of his property during one of his interviews at the time of his arrest, Defendants provide evidence that the 2007 Acura and his personal property were being held as potential evidence; therefore, the refusal to return it at that time was not a constitutional violation even if the request was made directly to one or more of them. There is also no admissible evidence to suggest any policy or custom that resulted in an unconstitutional retention of Plaintiff's property. Lastly, there is no admissible evidence that Defendant Darlington (in his supervisory role as Chief of Police) was grossly negligent in supervising the officers and staff that were responsible in particular for maintaining and returning Plaintiff's personal property. As a result, Plaintiff cannot establish that any of the individual Defendants were personally involved in the alleged violation of his right to due process.

Fourth, at the very least, one of the three above-stated alternative grounds for dismissal of this claim possesses facial merit, which is all that is required under the circumstances, due to Plaintiff's failure to oppose Defendants' legal arguments. In this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a

"modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule required shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & nn.2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

For all of these reasons, the Court grants Defendants' motion for summary judgment and dismisses Plaintiff's due process claim. Because the Court has determined that Plaintiff's claim must fail for multiple threshold reasons, the Court need not (and does not) reach the issue of whether Defendants are entitled to qualified immunity.

> B. **Whether Plaintiff's Claim for Municipal Liability Against Defendant Town of Coeymans Police Department Should Be Dismissed**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendants' memorandum of law. (Dkt. No. 53, Attach. 7, at 12-13 [Defs.' Mem. of Law].) To those reasons, the Court adds the following analysis.

Defendants argue that, as to Defendant Town of Coeymans Police Department, the police department itself cannot be sued as an entity separate from the Town of Coeymans. (Dkt. No. 53, Attach. 7, at 12-13 [Defs.' Mem. of Law].) To be sure, "it is well-settled that an administrative arm of a municipality, such as the Police Department . . . , cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Riley v. Taylor*, 19-CV-1451, 2019 WL 6829046, at *6 (N.D.N.Y. Dec. 13, 2019)

(report-recommendation by Baxter, M.J.) (citing *Leland v. Moran*, 100 F. Supp. 2d 140, 145 [N.D.N.Y. 2000] [Hurd, J.]; *Clayton v. City of Kingston*, 44 F. Supp. 2d 177, 183 [N.D.N.Y. 1999] [McAvoy, J.]); *accord, Acquah v. City of Syracuse*, 18-CV-1378, 2019 WL 3975463, at *2 (N.D.N.Y. Aug. 2, 2019) (Kahn, J.); *Hines v. City of Albany*, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008) (McCurn, J.). As a result, Plaintiff's claim for municipal liability against Defendant Town of Coeymans Police Department must be dismissed.

For the same reasons, to the extent that Plaintiff has sued Defendant Darlington in his official capacity as the former Chief of Police for the Town of Coeymans, Plaintiff's claim for municipal liability as to Defendant Darlington's official actions must also be dismissed. *See Hines*, 542 F. Supp. 2d at 227 (dismissing claims against the police chief in his official capacity because he was "considered an arm of the City" in that position). Moreover, to the extent that Plaintiff attempts to render the Town of Coeymans liable through the knowledge of one of its chief policymakers, that knowledge post-dated Defendant Darlington's employment with the police department.

In the alternative, because the Court has already found that Plaintiff cannot sustain a valid claim that the individual Defendants violated his constitutional rights, the Court finds that he cannot establish a basis for imposing municipal liability. *See De Asis v. New York City Police Dept.*, 352 F. App'x 517, 518 (2d Cir. 2009) (finding no error in the district court's failure to address the claim of municipal liability because it had correctly determined that there was no underlying constitutional violation) (citing *Segal v. City of New York*, 459 F.3d 207, 219-20 [2d Cir. 2006]).

Finally, at the very least, one of the above-stated alternative grounds for dismissal of this

claim possesses facial merit, which (again) is all that is required under the circumstances.

For all of these reasons, Plaintiff's claims against Defendant Town of Coeymans Police Department and Defendant Darlington (in his official capacity as Chief of Police) are dismissed.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 53) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Decision and Order would not be taken in good faith.

Dated: February 21, 2020
      Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge